ams
# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

EDWARD W. BETHEA, et al., )
)
        Plaintiffs, )
vs. )
) Case No. 10-1264-JAR
)
WELLS FARGO BANK, N.A., et al., )
)
        Defendants. )
                                               )

## MEMORANDUM AND ORDER

This action was removed from Ford County, Kansas District Court on August 2, 2010. Before the Court are defendant Kozeny & McCubbin L.C.'s Motion to Dismiss Plaintiffs' Petition (Doc. 7) and defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Counts I and II of Plaintiffs' Complaint (Doc. 10). Both motions argue that plaintiff fails to state a claim on which relief may be granted under Fed. R. Civ. P. 12(b)(6). The motions are fully briefed and the Court is prepared to rule. As described more fully below, defendant Wells Fargo Bank, N.A.'s motion is denied and defendant Kozeny & McCubbin L.C.'s motion is granted with respect to Count IV and denied with respect to Counts I and III.

**I.    Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[1] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood

---

[1]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

of mustering factual support for *these* claims."[2] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[3] but requires more than "a sheer possibility."[4]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[5] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[6]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[7] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[8] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an

---

[2]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[3]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009).

[4]*Id.*

[5]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[6]*Id.* (citing *Twombly*, 550 U.S. at 556).

[7]*Iqbal*, – U.S. –, 129 S. Ct. at 1949-50.

[8]*Id.* at 1950.

entitlement to relief."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

If the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the motion to a Rule 56 motion for summary judgment.  However, the court may consider documents that are referred to in the complaint.[11]  In this case, plaintiffs have attached the following documents to the Petition: (1) a copy of the real estate mortgage for their primary residence in Dodge City, Kansas;[12] (2) a Temporary Forbearance Agreement;[13] (3) a Notice of Sheriff's Sale;[14] (4) a Notice of Loss Mitigation Cancellation;[15] and (5) a copy of a letter from Wells Fargo Home Mortgage addressed to plaintiffs, dated April 6, 2010.[16]  Because these documents are referred to in plaintiffs' Petition, the Court may refer to them in resolving the motion to dismiss.

## II.    Background

The following facts are either alleged in plaintiffs' Petition or contained in the attachments to the Petition.  Plaintiffs' factual allegations are taken as true and construed in the

---

[9] *Id.*

[10] *Id.* at 1949.

[11] *See GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384-85 (10th Cir. 1997).

[12] (Doc. 13, Ex. A.)

[13] (Doc. 13, Ex. B.)

[14] (Doc. 13, Ex. C.)

[15] (Doc. 13, Ex. D.)

[16] (Doc. 13, Ex. E.)

3

light most favorable to plaintiff. The Court denies defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") request to take judicial notice of the foreclosure action and its procedural history. These facts are alleged in the Petition, and are taken as true under the familiar standard that applies to motions to dismiss. Furthermore, the relevant documents are attached to the Petition, so they may be considered as well.

Plaintiffs Edward Bethea and Bennie K. Wiley-Bethea entered into a loan transaction with Commercial Federal Mortgage Corporation on or about August 29, 1997. The loan transaction is evidenced by a promissory note and a written real estate mortgage. The mortgage grants Commercial Federal Mortgage Corporation a mortgage lien on Plaintiffs' primary residence in Dodge City, Kansas. Commercial Federal Mortgage Corporation subsequently assigned plaintiffs' mortgage to Wells Fargo. On December 4, 2008, acting through their attorneys Kozeny & McCubbin, L.C. ("K&M"), Wells Fargo commenced a foreclosure action against plaintiffs and various other defendants in Ford County, Kansas District Court. The court entered default judgment on the foreclosure action on January 8, 2009.

Before the Ford County foreclosure action was filed, plaintiffs had engaged in discussions with defendants in an attempt to work out an agreement that would allow them to cure any alleged defaults on their mortgage agreement. On January 28, 2009, plaintiffs and Wells Fargo entered into a Temporary Forbearance Agreement ("forbearance agreement"),[17] which memorializes a prior conversation between the parties and "confirms [plaintiffs'] promise to pay the amounts shown below by the dates indicated." The forbearance agreement provided

---

[17]The Court declines to refer to this agreement as a "loan reinstatement agreement," as plaintiffs do. The Court references the forbearance agreement by its actual title, as it appears on the face of the document attached to the Petition.

4

for fifteen payments to be made between February 2009 and March 2010. The forbearance agreement further provides that "failure to remit funds in accordance with the due date(s) and amount(s) indicated may result in the acceleration of the loan pursuant to the terms of your note and security instrument." Plaintiffs understood that their home mortgage loan had been reinstated under the terms of the forbearance agreement and that they would be allowed to continue to make monthly payments. Plaintiffs further believed that the foreclosure action would be dismissed. Defendants did not dismiss the foreclosure action.

Plaintiffs continued to make payments in accordance with the forbearance agreement that Wells Fargo accepted. On May 3, 2009, plaintiffs sent their mortgage payment by personal check to Wells Fargo with an incorrect amount on the handwritten amount. Wells Fargo returned the check and plaintiffs immediately made the payment by phone, which Wells Fargo accepted. In June 2009, plaintiffs paid their mortgage by check, which was returned due to insufficient funds. Upon notification, plaintiffs immediately paid the amount by phone, which Wells Fargo accepted.

On July 2, 2009, K&M and Wells Fargo submitted to the Dodge City Daily Globe a Notice of Sheriff's Sale for plaintiffs' residence. At the time this notice was published, the court had not yet entered an order of sale or otherwise directed the Ford County Sheriff to advertise the sale. After the Notice was published, some of plaintiffs' friends and acquaintances in the community asked plaintiffs about the status of their residence and the Notice of Sheriff's Sale. A Notice of Loss Mitigation Cancellation was filed with the Court on July 17, 2009, apprising the court that the forbearance agreement was breached on June 24, 2009 by virtue of a payment being rejected for insufficient funds. "On or about June 24, 2009, Plaintiff resumed the

5

foreclosure action by instructing Counsel to proceed with obtaining an Order of Sale."

At this time, plaintiffs discovered for the first time that the foreclosure action had not been dismissed after they signed the forbearance agreement. Plaintiffs further discovered that the Notice of Sheriff's Sale had been published, despite the fact that the court had not issued an Order of Sale and despite the fact that Wells Fargo had accepted plaintiffs' June phone payment. Plaintiffs requested a stay of prosecution in the foreclosure action and contacted K&M regarding the default judgment. On October 2, 2009, the court granted Wells Fargo's motion to dismiss the foreclosure action without prejudice.

In response to plaintiffs' inquiry about additional amounts shown on their mortgage loan statements, Wells Fargo sent a plaintiffs a letter on April 6, 2010. The letter sets forth an itemized list of specific amounts due and states that payment of those amounts is needed. Among the charges are $200 on July 14, 2009, described as "Publish Foreclosure Sale Cost," $15 on July 29, 2009 for "Property Inspection," and $180 on March 12, 2010 for "Foreclosure Attorney Fees." Plaintiffs incurred $5962.50 in attorney fees defending the foreclosure action.

**III.    Discussion**

Plaintiffs' Petition alleges four counts: (I) abuse of process against both defendants; (II) Kansas Consumer Protection Act ("KCPA") against Wells Fargo; (III) Fair Debt Collection Practices Act ("FDCPA") against K&M; and (IV) defamation and invasion of privacy against both defendants. Defendant Wells Fargo moves to dismiss Counts I and II; K&M moves to dismiss counts I, III, and IV.

   *A.    Abuse of Process Claim Against Both Defendants (Count I)*

An abuse of process claim is based on the use of the judicial system for some process

other than its intended purpose.[18]  In Kansas, "abuse of process is concerned with process employed 'in a manner not contemplated by law, or to obtain an object which such process is not intended by law to effect.'"[19]  "The gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."[20]  In Kansas, the elements of an abuse of process claim are: "(1) that the defendant made an illegal, improper, perverted use of the process . . . and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process . . . ."[21]

### 1. Wells Fargo

Wells Fargo argues that the abuse of process claim should be dismissed because its motive for leaving the foreclosure action pending was to ensure its rights and remedies under the mortgage and notice, as plaintiffs were in the process of curing their arrears on their mortgage loan.  If plaintiffs had defaulted under the forbearance agreement, Wells Fargo would have had the contractual right under the Mortgage to resume the pending foreclosure action.  Wells Fargo insists such a motive is in no way an improper use of the civil process.

Plaintiffs allege that Wells Fargo led them to believe the foreclosure action would be dismissed when plaintiffs entered into the forbearance agreement.  Plaintiffs allege that defendants intentionally refrained from dismissing the foreclosure action in order to gain leverage against plaintiffs and avoid potentially filing a second foreclosure action.  Furthermore,

---

[18]*Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.*, 26 P.2d 1284, 1287 (Kan. Ct. App. 2001).

[19]*Tappen v. Ager*, 599 F.2d 376, 380 (10th Cir. 1979) (quoting *Jackson & Scherer, Inc. v. Washburn*, 496 P.2d 1358, 1366 (Kan. 1972)).

[20]*Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994).

[21]*Id.* (quoting *Porter v. Stormont-Vail Hosp.*, 621 P.2d 411, 416 (Kan. 1980)).

7

plaintiffs allege that defendants attempted to use the open foreclosure action as a strict foreclosure proceeding, despite the fact that plaintiffs' May and June 2009 payments had been accepted by Wells Fargo. Finally, plaintiffs urge that defendants published the Notice of Sheriff's Sale without the requisite Court Order allowing them to do so. Motive is a question of fact and this Court accepts as true the factual allegations in plaintiffs' Petition on a motion to dismiss. Even if the Court accepts Wells Fargo's conclusory assertion of its motive in failing to dismiss the foreclosure action, it does not explain why defendants moved forward with the Sheriff's Sale, despite accepting payment from plaintiffs in May and June 2009. Accepting all of the facts in the Petition as true, and drawing all reasonable inferences in favor of plaintiffs, plaintiffs have alleged a plausible claim against Wells Fargo for abuse of process under Kansas law.

    2.    **K&M**

K&M argues for dismissal on the basis that, under the terms of the forbearance agreement, defendants were not required to "reinstate the loan," and that the default judgment was already in place at the time the forbearance agreement was executed. But this is not a claim for breach of contract; instead, the claim alleges that defendants abused the foreclosure action by leaving it pending and proceeding with the Notice of Sheriff's Sale, despite the fact that Wells Fargo entered into the forbearance agreement with plaintiffs and accepted all payments under the forbearance agreement up until the Notice of Loss Mitigation was entered on July 17, 2009.

K&M also urges that it never did enforce the judgment against plaintiffs. But the records attached to the Petition show that K&M and Wells Fargo "resumed the foreclosure

8

action by instructing Counsel to proceed with obtaining an Order of Sale,"[22] and asked the Ford County District Court to allow the foreclosure action to commence. Only after plaintiffs were notified about the Notice of Sheriff's Sale, and proceeded to contact K&M, did defendants dismiss the foreclosure action. Moreover, the Petition alleges that K&M did cause the Notice of Sheriff's Sale to be issued prior to obtaining a Court order allowing it to do so, and that K&M filed the Notice of Loss Mitigation Cancellation. Drawing all inferences in favor of plaintiff, the Court finds that defendants would not have taken this step if not to enforce the default judgment, despite the fact that Wells Fargo had accepted all payments under the forbearance agreement, and indicated that the payments had been made on time. The Court finds that plaintiffs have alleged sufficient facts to give rise to a plausible claim of abuse of process against defendant K&M.

### B. *KCPA Claim Against Defendant Wells Fargo (Count II)*

In Count II, plaintiffs claim that Wells Fargo violated the KCPA by committing acts that were unconscionable, deceptive, and in violation of the terms of plaintiffs' mortgage, in violation of K.S.A. § 50-626(a). They aver that "the loan and loan reinstatement and loan servicing transactions" are "consumer transactions" within the meaning of K.S.A. § 50-624. Under K.S.A. § 50-626(a), "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." A "consumer transaction" is defined as: "a sale, lease, assignment or other disposition for value of property or services within this state (except insurance contracts regulated under state law) to a consumer; or a solicitation by a supplier with respect to any of

---

[22](Doc. 13, Ex. D.)

these dispositions."[23]  In interpreting the KCPA, "the guiding principle to be applied . . . is that the act is to be liberally construed in favor of the consumer."[24]

Neither party disputes that a mortgage loan transaction falls within the definition of "consumer transaction" under the KCPA.[25]  Wells Fargo argues neither entering into the forbearance agreement, nor applying attorneys' fees and costs from the foreclosure action to plaintiffs' mortgage loan, constitute "consumer transactions" between itself and plaintiffs.  Furthermore, Wells Fargo contends that the statute of limitations has expired, because the claim accrued at the time of the original mortgage transaction occurred in 1997.  Plaintiffs respond that the forbearance agreement is a separate act or practice subject to the KCPA and that Wells Fargo's practices in the collection of the primary mortgage debt and the "smaller amounts Wells Fargo has tried to 'tack on' to the mortgage balance," constitute violations of the KCPA.

The Petition alleges that "Wells Fargo's actions and statements with respect to reinstatement and the terms of the reinstatement agreement suggested the Foreclosure Action would be dismissed after Plaintiff's entered into the . . . agreement" and that these actions "were unconscionable deceptive, and in violation of the terms of Plaintiffs' mortgage."  It is clear that plaintiffs do not allege that the original mortgage loan transaction constitutes a deceptive act or practice under the KCPA.  Instead, they claim that Wells Fargo's attempt to collect debt associated with the original mortgage constitutes a deceptive act or practice.  Additionally, plaintiffs allege that the practice of charging to the mortgage loan attorneys' fees and costs

---

[23]K.S.A. § 50-624(c).

[24]*Kansas ex rel. Stephan v. Bhd. Bank & Trust Co.*, 649 P.2d 419, 422 (Kan. Ct. App. 1982).

[25]*See id.*

incurred in the foreclosure action is a deceptive act or practice. Therefore, the Court must determine whether (1) the act of collecting payments set forth in the forbearance agreement constitutes a separate consumer transaction from the original loan transaction; and (2) whether the charge for attorneys' fees constitutes a separate consumer transaction. After making these threshold determinations, the Court will proceed to determine if plaintiffs' claims accrued within the statute of limitations.

The forbearance agreement provides that plaintiffs promise to pay the designated amounts by their respective due dates and that if plaintiffs fail to make a timely payment, it "may result in the acceleration of the loan pursuant to the terms of your note and security instrument." Unlike plaintiffs' original mortgage and note, the forbearance agreement itself does not constitute "other disposition for value of property." The only thing plaintiffs received in exchange for their timely payments is avoidance of the acceleration of the original loan. Therefore, the forbearance agreement itself does not constitute a "consumer transaction" under the KCPA. However, the KCPA prohibits "any deceptive act or practice <u>in connection with</u> a consumer transaction."[26] Plaintiffs allege that the deceptive act or practice occurred in 2009 when defendants led them to believe that the foreclosure action would be dismissed if they entered into the forbearance agreement. Assuming these factual allegations are true, the misrepresentations were made <u>in connection with</u> Wells Fargo's attempt to collect the debt incurred on the original mortgage loan, a consumer transaction.

Plaintiffs also allege in the Petition that Wells Fargo's act of charging attorneys' and costs associated with the foreclosure action to their mortgage loan, is a consumer transaction that

---

[26] K.S.A. § 50-626(a).

constitutes a deceptive act or practice. Wells Fargo urges that the act of applying attorneys' fees and costs from the foreclosure action to plaintiffs' mortgage loan was not a consumer transaction because there was no sale or acquisition of goods or services or property. But there was an acquisition of services—Wells Fargo charged plaintiffs for the costs associated with retaining K&M's services in prosecuting the foreclosure action.

Actions under the KCPA are subject to the three-year statute of limitations found in K.S.A. § 60-512.[27] Wells Fargo asserts that the claim accrued on the date of the consumer transaction, yet none of the cases they cite supports this interpretation. Instead, cases construing the accrual date for the statute of limitations in KCPA cases focus on the timing of the alleged misrepresentation or omission.[28] Plaintiffs allege that Wells Fargo made certain misrepresentations or omissions surrounding Wells Fargo's obligation under the forbearance agreement; namely, that it would dismiss the foreclosure action in exchange for plaintiffs' timely payments on the mortgage loan. They contend that the misrepresentations or omissions were made on or about the time they entered into the forbearance agreement in January 2009. Plaintiffs further allege that defendants violated the act by applying attorneys' fees and costs associated with the foreclosure action to the mortgage loan in April 2010. Both allegations involve acts or practices that occurred within the three-year statute of limitations. Therefore, defendant Wells Fargo's motion to dismiss Count II is denied.

### C. FDCPA Claim Against Defendant K&M (Count III)

---

[27]*Thomas v. Sifers*, 535 F. Supp. 2d 1200, 1209 (D. Kan. 2007) (citing *Williamson v. Amrani*, 152 P.2d 60, 71 (Kan. 2007)).

[28]*See id.*; *Culp v. Sifers*, 533 F. Supp. 2d 1119, 1127 (D. Kan. 2007); *Griffin v. Sec. Pac. Auto. Fin. Servs. Corp.*, 25 F. Supp. 2d 1214, 1217–18 (D. Kan. 1998).

12

Plaintiffs allege in the Petition that K&M intentionally used the foreclosure action to assist in collecting a residential mortgage debt in a summary fashion, despite the forbearance agreement, and attempted to schedule a Sheriff's sale of the property without first obtaining an order from the court. Plaintiffs contend that these practices constitute unfair and unconscionable means of attempting to collect a debt prohibited by the FDCPA, 15 U.S.C. § 1692f.[29] K&M moves to dismiss this claim on the basis that any violation of the FDCPA is a bona fide error that is not actionable.

K&M reiterates its arguments on Count I, that under the terms of the forbearance agreement, defendants were not required to "reinstate the loan," and that the default judgment was already in place at the time the forbearance agreement was executed. But K&M fails to explain how these facts require dismissal of the FDCPA claim. The FDCPA claim is not dependent upon plaintiffs' construction of the forbearance agreement as a "reinstatement agreement." Nor is plaintiffs' claim dependent upon K&M actually foreclosing on their property.

K&M invokes the bona fide error defense, an affirmative defense that "insulates debt collectors from liability even when they have violated the FDCPA."[30] A defendant who seeks the protection of this affirmative defense has the burden of proving that the violation was unintentional, a bona fide error, and made despite the maintenance of procedures reasonably adapted to avoid error.[31] The Court denies K&M's motion on this basis, as it has made no

---

[29]*See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (explaining that the FDCPA applies to the litigating activities of lawyers).

[30]15 U.S.C. § 1692k(c); *see Johnson v. Riddle*, 443 F.3d 723, 727 (10th Cir. 2006).

[31]*Id.*

13

showing of these elements, all of which involve questions of fact that are not amenable to resolution on a motion to dismiss. On a motion to dismiss, the Court accepts as true the factual allegations set forth in the Petition. For example, the Court accepts as true that K&M intentionally violated the FDCPA. K&M's motion to dismiss the FDCPA claim is denied.

### D. *Defamation and Invasion of Privacy Claims Against K&M (Count IV)*

Plaintiffs allege in their Petition that both defendants are liable for defamation and invasion of privacy based on the publication of the Notice of Sheriff's Sale, which contained false information at the time it was communicated to the newspaper, and which painted plaintiffs in a false light. The Court notes at the outset that "[i]nvasion of privacy and defamation are separate and distinct torts even though they share some of the same elements and often arise out of the same acts."[32]

K&M contends that these claims must be dismissed because statements made in a judicial proceeding are absolutely privileged, which extends to anything published in relation to a matter at issue in court."[33] The Kansas Supreme Court has explained:

> Invasion of privacy torts which require publication and defamation torts share the common defense of privileged communications which grant immunity to otherwise actionable publication. Judicial proceedings are absolutely privileged communications, and statements in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions. They are privileged communications because of the overriding public interest in a free and independent court system. This absolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether

---

[32]*Froelich v. Adair*, 516 P.2d 993, 996 (Kan. 1973).

[33]*Id.*; *see also Clear Water Truck Co. v. M. Bruenger & Co.*, 519 P.2d 682, 685 (Kan. 1974).

14

said in pleadings, affidavits, depositions or open court.[34]

Plaintiffs object that publication of the Notice of Sheriff's Sale is not privileged because it was not published in relation to a matter at issue in court since it was not published pursuant to a court order. Furthermore, plaintiffs argue that the publication does not constitute a pleading, affidavit, deposition, or statement made in open court.

While plaintiffs are correct that the Notice of Sheriff's Sale is not a publication that was actually filed in the foreclosure action in the form of a court filing, it was certainly given in the course of a judicial proceeding (the foreclosure action) and published in relation to the foreclosure action in K&M's capacity as an attorney in that action. The standard is whether the communication was relevant to an issue involved in the judicial proceeding. The Notice of Sheriff's Sale was relevant to the foreclosure action, as it was required in order to proceed with foreclosing on the property. The Court finds that applying the absolute privilege to the statements published in the Notice of Sheriff's Sale is in furtherance of the overriding public interest in a free and independent court system. Accordingly, K&M's motion to dismiss Count IV is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Kozeny & McCubbin L.C.'s Motion to Dismiss Plaintiff's Petition (Doc. 7) is granted in part and denied in part. It is granted on Count IV and denied on Counts I and III.

**IT IS FURTHER ORDERED BY THE COURT** that defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Counts I and II of Plaintiff's Complaint (Doc. 10) is denied.

**IT IS SO ORDERED.**

---

[34]*Adair*, 516 P.2d at 996–97.

Dated: November 23, 2010

    S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE